Reversed and remanded with instructions.

CRANDALL, P.J., and REINHARD, J., concur.

Dr. Christopher KEMP,
Plaintiff-Appellant,

v.

The BOARD OF REGENTS OF NORTH-WEST MISSOURI STATE UNIVERSITY, et al., Defendants-Respondents.

No. WD33108.

Missouri Court of Appeals,
Western District.

Dec. 28, 1982.

George M. Winger, Bagby, Winger & Jacob, Kansas City, for plaintiff-appellant.

Max W. Foust, Norris E. Greer, Morris & Foust, Kansas City, for defendants-respondents.

Before KENNEDY, P.J., and WASSERSTROM and LOWENSTEIN, JJ.

WASSERSTROM, Judge.

Plaintiff sues to recover damages from defendants the Board of Regents of Northwest Missouri State University ("the University"), its President, Dr. Owens, the Vice President for Academic Affairs, Dr. English, and the former Provost, Dr. Mees. All defendants filed motions in the trial court to dismiss for failure to state facts upon which relief could be granted, and those motions were sustained. Plaintiff appeals.

Count I of the petition alleges that plaintiff was employed as an assistant professor by the defendant Board of Regents from August 1975 through the 1979–1980 school year, and he had attained tenure. In January 1976, he advised his Department Chairman Dr. Lowe that he was considering enrolling in the University of Sarasota ("Sarasota") in Florida for the purpose of obtaining a Doctor of Education degree. Plaintiff was concerned that Sarasota was newly formed and was not yet accredited. He inquired of Lowe whether it would be advisable to discuss his plans with Dr. Thate, the then Provost, but after discussion, Lowe advised plaintiff that discussion with Thate was not necessary.

In January 1976, plaintiff did enroll at Sarasota and commenced work toward the doctorate. In July, while plaintiff was in Sarasota, discussions began at the University indicating that there would be problems accepting a doctorate from Sarasota. Upon learning of that, plaintiff asked the president of Sarasota to write to defendant Mees setting forth the background and requirement for the degree on which plaintiff was working.

Plaintiff returned to the University to resume teaching for the fall semester of 1976, and he continued to work on his dissertation. It was not until April 1977 that plaintiff was advised that his degree from Sarasota would not be recognized. By that time he had paid out approximately $3,440 in tuition to Sarasota.

After receiving the notice concerning nonrecognition of the doctorate, plaintiff entered into discussions with Dr. Foster, the then President of the University, who advised that if Sarasota was an emerging institution, there should be no problem in recognizing a doctorate granted by it. Foster wrote to plaintiff that he was "sorry it had taken so long to determine the status of this situation." Foster further told plaintiff to get all of his documents together, and a final decision would then be made. At the time of these discussions, plaintiff told Foster that he was leaving Kansas City, Missouri, to have his thesis typed. The degree of Doctor of Education was conferred by Sarasota to plaintiff in August 1977. Plaintiff obtained a transcript of his work showing the earning of the Doctor's degree and delivered it to defendant English.

In September 1977, English advised plaintiff that the University would not recognize his Sarasota degree for purposes of promotion, raises, or the payment of the stipend for an earned doctorate degree, and English

subsequently stated that the decision mentioned would not be expressed in writing.

In December 1977, plaintiff submitted an application for rank promotion from Assistant Professor to Associate Professor. That promotion was denied without any reason being given. Although plaintiff furnished a copy of his dissertation to demonstrate that his doctorate degree was an earned one, the University has failed and refused to pay plaintiff the stipend of $500 "which it was the policy of the University to pay all faculty members upon their earning of a doctorate degree." Further, the University has refused to publish in its official catalogue the Doctor of Education degree earned by plaintiff from Sarasota, even though other colleges and universities, including the University of Missouri at Columbia, Iowa State University and the University of Arkansas do recognize degrees awarded by Sarasota.

Count I concludes with the allegation that the University has breached its contract with him in the following regards: (i) failing to recognize the earned doctorate degree awarded plaintiff by Sarasota; (ii) in failing to award plaintiff the stipend due recipients of earned doctorates; (iii) in failing to consider plaintiff's rank promotion application; and (iv) in failing to allow plaintiff to enjoy the professional status to which he is entitled by virtue of his earned degree.

In Count II, plaintiff alleges that the failure by defendant Mees to notify him from July 1, 1976, until April 25, 1977, that the University would not accept the Sarasota degree was without justification or excuse, in light of the expenses plaintiff incurred during that period of time, and which as a practical matter deprived plaintiff of the opportunity to seek his doctorate at another institution; and defendant Mees knew or should have known that the decision not to accept the Sarasota degree would cause or be likely to cause plaintiff to suffer severe emotional distress. Plaintiff further alleged that the actions of defendants Owens and English in determining not to recognize plaintiff's doctorate degree were deliberate, unlawful, outrageous, reckless, wanton and malicious and were with the intention of causing plaintiff severe emotional distress.

Plaintiff further alleged that as a result of those acts, he has suffered severe emotional distress, he has suffered high blood pressure and skin rash, has been forced to seek medical attention and take medication, he has incurred doctor bills and expenses of approximately $700, and that those expenses are continuing.

Defendants ask this court to peremptorily affirm the judgment below for the reason that defendant's point relied upon in his brief as appellant violates Rule 84.04(d). That contention is well taken insofar as it relates to plaintiff's contentions concerning Count II. Nevertheless, plaintiff's argument with respect to Count II, as well as his argument concerning Count I, will be considered as a matter of grace.

## I.

■ Under Count I, plaintiff seeks to recover for breach of contract. To show the contract in question, he attached to his petition his contract for the 1975–1976 school year and the renewals for the school years 1977–1978 and 1979–1980. The various obligations which plaintiff asserts were undertaken by the University are not set forth in any of those exhibits, but plaintiff points to paragraph 3 of the 1975–1976 contract which provides: "This contract is expressly made subject . . . to the rules, regulations, policies, orders and procedures of the Board of Regents as set forth in the Faculty Handbook or as from time to time during the term of this agreement, otherwise may be adopted, prescribed, promulgated and disseminated or as may be amended by the Board of Regents. . . ."

Rule 55.22 provides that when reliance is made upon a written contract, the same may be pleaded according to legal effect, may be recited at length in the pleading, or a copy may be attached as an exhibit. Here plaintiff did not attempt to attach the Faculty Handbook, nor did he quote from it in his pleading. Nor does he plead by legal

effect any provision in the Handbook requiring the University to recognize an earned doctorate degree in any specified manner, or to require the University to grant a rank promotion, or "to allow plaintiff to enjoy the professional status to which he is entitled by virtue of his earned degree." The petition simply fails to allege any basis upon which to determine or infer that there was any contract obligation upon defendants in any of those regards.

■ The situation is different, however, with respect to the $500 stipend. Count I of the petition does allege that there was a policy by the University to pay all faculty members that stipend upon their earning of a doctorate degree. Such a policy, if established by evidence, would come within paragraph 3 of the basic employment agreement. Plaintiff should be given an opportunity to make proof with respect to the existence of such a policy and the quality of his degree to meet such policy.

## II.

■ Under Count II, plaintiff seeks recovery of damages on the theory of "outrageous conduct." That doctrine was recognized in this state by *Pretsky v. Southwestern Bell Telephone Company*, 396 S.W.2d 566 (Mo.1965). However, in order for a plaintiff to recover on this theory he must show that the defendant's conduct was "extreme or outrageous." As explained in Restatement (Second) of Torts, Sec. 46 (1965):

"It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"

■ The conduct alleged to have been followed by the defendants here does not measure up to the standard required in order to come under the doctrine in question. Taking all of plaintiff's allegations as true, he has not made out a case of outrageous conduct cognizable by law. *Pretsky v. Southwestern Bell Telephone Company, supra; Leonard v. Pioneer Finance Co.,* 568 S.W.2d 937 (Mo.App.1978); *Boyd v. Kansas City Area Transp. Authority,* 610 S.W.2d 414 (Mo.App.1980); *Wilt v. Kansas City Area Transportation Authority,* 629 S.W.2d 669 (Mo.App.1982).

The judgment is affirmed as to Count II. It is reversed as to Count I and remanded for trial on the sole issue as to whether plaintiff is entitled to the stipend of $500.

All concur.